25 cv 1255 MV/JFR

## Motion for Leave for Page Extension

Comes Now, David King, proceeding pro-se and hereby requests liberal construction in his petition and pleadings, as he is not educated in the Art and practice of Law.

The following petition is a total of 21 pages long and the petitioner MOTIONS the court for leave to request a page extension, "If" it is so required by any Rules. The request is necessary to provide the court with the necessary information warranting the relief requested in this case. Although, this court and the Honorable Judge Martha Vasquez is familiar with the issues presented herein. This is made in Good Faith and not for the purpose of delay, but to provide the court with all the information necessary to save time and raise all claims in one filing to prevent the necessity of multiple filings to address the overall circumstances.

The legal cause involved in this instant case is complex and as such requires all the information contained herein to make a Right and Just Ruling.

Table of Contents:

I.) Relevent Case Information....................1
II.) Procedural History.........................1-2
III.)Overview...................................3
    Jurisdiction...............................3
IV.) Extraordinary and Compleeing Reasons Granting Relief....5-7
VI.) Legal Arguements..........................7-14
VII.) Audita Querela Relief is Warranted........14-17
VIII.) Finally and Conclusion..................17-18
Disparity Options..............................19-21

FILED
UNITED STATES DISTRICT COURT
SANTA FE, NEW MEXICO

DEC 1 5 2025

MITCHELL R. ELFERS
CLERK

IN THE UNITED STATES DISTRICT COURT OF NEW MEXICO

UNITED STATES OF AMERICA                          CASE No. 92-2092-MV
                                          CASE No. Civ.-No. 16-0501-MV/KK
v.

DAVID KING

PETITION FOR WRIT OF AUDITA QUERELA

COMES NOW, David King, pro-se in full necessity in the above numbered cases and hereby MOVES the Court for issuance

of a writ of audita querela for the purpose of resentencing under the current guidelines, changes in court precedence, and

amendments by Congress or the U.S.S.C..

I). RELEVENT CASE INFORMATION:

    1).  1::23-CR-01068-MLG, U.S. District Court of New Mexico

    2).  CR-42233- & CR-45316, 2nd Judicial Court of New Mexico (1989)

    3).  D-202-CR-94-3115 ran concurrent in CR-96-1997, CR-2545, & CR-952813 2nd N.M. (1996)

    4).  1:02-CR-02092-001-MV U.S. District Court of New Mexico

II.) PROCEDUARAL HISTORY:

    5).  8/11/2002 King was charged under 922(g)(1) & 924(a)(2) as a felon in possession of a firearm.

    6).  On 12/12/2002 Discovery was ordered , then received on 12/16/2002 for King's criminal history.

    7).  A plea was offered for 3 years prior to this request. Based on his criminal history, the plea was increased from 5 to

       10 years. On July 15th, 2003 David Plead the 922.(e)

    8).  After this plea was arranged, the government motioned to enhance the charge to a 924(e) with an objection raised

       by the government to the P.S.R. on 8/26/2003, not included in the plea.

    9.)  On 9/25/2003 King was forced to then withdraw the plea, which was granted on 9/25/2003.

    10.) As required , the government provided the discovery information pertaining to the ACCA 924(c) enhancement.

    11.) Defense counsel Kenneth Gleria objected to the late filing on 1/30/2004 under Fed. R. Crim.P. 16(a)(1)(B). the court

       at this time found the violation did not occur and was not prejudicial  to the defendant. The court specified that the

       prosecution was not required to furnish other information and underlying facts, as the information "only contained

       information about prior convictions" and "the defendant suffered no prejudice". See U.S. King 2004 U.S. Lexis

       34198 District of N.M.

1

12). David King was then convicted under 924(c) and sentenced to 180 months in prison. Counsel timely appealed by arguing that the factual findings violated Defendant's 6th Amendment rights under Booker precedence. The appeals court found the photographs used were harmless error as the terms of a generic burglary had been established by the plea. See Fed. R. Crim.P. 52(a)and U.S. King 422 F3d 1055 U.S. App. 10th Cir. 2005 Lexis 18851.

13). After serving the equivalency of a 15 year sentence in prison. David King filed a Habeas Corpus action, which was untimely GRANTED on 4/13/2017. The sentence was amended to 96 months followed by a 2 year term on supervised release. The findings in the Supreme Court regarded Johnson and Welch found that the 924(c)(e)(2)(B)(ii) residual clause was unreasonably unconstitutional by vagueness and that the burglary of a storage unit is not a violent conduct. This created a large disparity in the sentencing and the error was a prejudicial miscarriage of justice. David King was released on 6/5/2017. The term of supervised release ended on 4/13/2018

14.) The case    was then used to enhance David King's present serving case, subjecting him to an even higher sentencing guideline as a category II criminal offender. The government is taking yet another bite of the apple and taking back the time credits he received to obtain a total of 17 years from this one EGREGORIOUS ERROR. As he previously served the 15 years and now he has the included guidelines of a category II offender.

III.) OVERVIEW:

15.) Congressional amendments and the Supreme Court holdings have been made, of which substantially impact the standards of the findings made at the resentencing in this instant case. The adverse effects warrant the use of audita querella to apply these changes in the law to amend, as no other remedies will suffice. These amendments and applications of the law would allow Booker to be applied. If David Kings was sentenced under the law today, he would not have had a sentence exposure of 180 months to life. Since he had already served the sentence by the time it had been vacated.

16.) The very claims that David King had raised at appeal and at sentencing, were found by the Supreme Court to have been unconstitutional. Common sense alone would advise us that a storage shed burglary can in no way be found as a violent offense or crime of violence when there are no occupants inside of the storage shed. The Circumstances to which King was sentenced to, also show that he in fact was not guilty of the offense, but plead to it under the threat of a prolonged term of imprisonment if taken to trail. He may have won had he of gone to trail and the circumstances have been considered.

17.) A similar finding can be found with the issue of resentencing, as there are many issues that should have been brought to the courts attention. However, after so many years in prison, King was happy to have any kind of relief without considering the arguments relative to determining what a fair sentence would have been.  The focus was

geared towards proving that he was not eligible for the ACCA enhancement. There are many other factors the court may not have considered, which would have warranted a fully vacated sentence, or a much lower guideline range. However, The tragedy and concern for Mr. King is that many of the claims can not be raised in a habeas corpus motion.  This factor supports the issuance of a writ of audita querela. This in turn now has a further prejudicial effect in that David King  is now considered to be a category II offender based on conduct that he never has been given the opportunity to defend at trail or have  a fair chance in defending himself, which essentially amounted to Mr. King being forced to plead his entire life away.  All things considered, David King's sentence of 96 months must be overturned in full to reflect the serious deprivation of liberty and injuries' caused by the ACCA enhancement. The government should not irresponsibly wield such weapons' of the judiciary statutes because they find ways to abuse the system by turning a 3 year sentence into a 15 year sentence and then coming back for more to continue the conduct after it was deemed unconstitutional, which was apparent from the start. David King's conduct was not violent, yet the government entrapped him into plea after plea when they were not upfront and honest about their intentions. Had the government made full and timely disclosures, it is likely the sentence exposure would never had been 180 months to begin with for simple possession of a firearm.

When we also consider the constitution ratified the right to bear arms under the second Amendment, it make the government's motives more questionable.

18.)    The Court has jurisdiction over this matter under the all writs act, and the only form of relief available is a writ audita querela. Rule 60(B)(6) does not apply here and neither would 2255(h) or 3742. The form of relief requested falls precisely underneath the All Writ Act. The issue at hand is that David King faced new criminal proceedings and was in fact convicted. which in part was a result of overserving many years in prison for a sentence that was wrongfully imposed under a vague and unambiguous law that had been interpreted to achieve results not originally intended by Congress.

19.)    As a result of prolonged incarceration, David King was denied the fundamental liberties and freedoms that justice under the constitution was meant to provide him with. This in turn has caused irreparable injuries by the establishment. He was unable to access healthcare as well as treatment for Hepatitis C while incarcerated, which has now led to cirrhosis of the liver and stage 4 fibrosis due to scarring, of which was preventable at the time of the unlawful confinement. As a result , he also suffers from Barrett's esophagus disease, gastro esophageal reflux disease, portal vein hypertension, thrombocytopenia, and enlarge spleen this diagnosis shows a final life trajectory of 10-12 years and is a terminal illness.

20.)    Prior to his incarceration in 2004, David King had married Geraldine Sanchez. She passed away due to liver

disease in 2022. David remained married throughout his incarceration and only had a few years spent with

Geraldine due to the excessive incarceration. David was left with very little community support. He had sustained

injuries from a motorcycle accident and with his wife, the one solid foundation gone he fell back into opioid use.

This however, is only a mere summary of the injuries he has endured as a result of the ACCA enhancement

determination and 180 month sentence, of which was unlawful and in violation of the Constitution. David King ,

now is 65 years of age, is facing the equivalency of a life sentence without a single chance to be heard or raise

issues regarding the prior cases at trial. Where is the Fundamental Fairness in this tragedy story. Regardless of

what actually happened, King was forced to plea and sign his life away for conservation of resources in exchange

for a lower guideline range instead of the guarantee of a fair trial. This leaves little to no remedy aт law for the

equivalent of a life time in prison under government coercion and treats of enhanced sentences at trial, as each

time he has essentially plead his life away. This leaves little to no remedy available for the equivalency of a life

time in prison, showing the government's methods have failed. Their argument lacks validity in that claiming

lengthy prison sentences lower recidivism and the crime rate, provides support for the community, promotes

respect for the law, and serves public interest in an  economical way.

21.)    David has saved the government numerous resources in accepting pleas to move the process along, yet in return

he gave up the opportunity to prove his innocence under the threat of extreme incarceration. This naive‒ness

has allowed the government to continue to target him. His most resent psychology evaluation show that he is a

low recidivism due to his age. The evaluation was performed by Moss Aubrey on 1/26/2023, showing that his

PTSD and anxiety has fueled his substance abuse and its likely that Mr. King will cease all criminal activity due to

his age. This factor alone further counts against continued incarceration.

22.)    The injustice that has been committed against Mr.. King and the undue hardship may be corrected through

the remedy requested in this Motion. Although, such relief will only be one step in the right direction to provide a

remedy  and redress the cause, which is important in correcting the errors and constitutional violation.

The retroactive and non-retroactive amendments in the law show a 96 month sentence would be considered excessive under today's standard and Supreme Court decisions. There is a disparity in sentencing when considering the relevant factors in comparison to similar situated offenders. This is especially true when considering the fact that David King served the entire sentence imposed, in full, under an unlawful enhancement clause that was overturned for those very specific circumstances raised in the district court and in the court of appeals. This was considered harmless error at the time, yet, the end result is obviously harmful and degrading. serving 84 month in prison is far from harmless, warranting a potential to vacate the entire conviction. As such would be lawful under the Second Restatement of Sorts because such misrepresentations of the law must be credited. Even if the 96 month sentence is stayed, subtracting 84 months from the 96 month sentence would leave 12 months. After factoring in the good time credits as well as the time served on probation, let alone the injuries caused, allows for a more fair and accurate calculation in consideration.

As the restatement clearly requires such credit to be applied as a sanction for misrepresentation. Labeling David King's conduct as violence is a misrepresentation of fact or law amounting to tortious conduct on the government's part. This would overturn his sentence in full and therefore prevent the government from continuing a further harm or injury.

there is no other remedy for this type of serious error since David King had already served his sentence at the time of resentencing.

23.)  Resentencing to vacate the entire sentence provides a remedy to reflect the amount of time David King spent unlawfully incarcerated. Being that this was obtained under an unconstitutionally vague, undefined clause, regarding what type of conduct is considered violent, did not actually portray David's actual conduct. This is improper use of a charging instrument and allowed an overzealous prosecutor to provide an excessive punishment based on impermissible factors without providing

an equitable remedy at law. Many balancing factors  fit into this equation, which shows that a miscarriage of justice did in fact result. These facts alone allow for an entire reversal of the sentence due to the seriousness of the constitutional violations. The 96 month resentencing in itself was higher than the average for David's category and offense level, which is likely a reflection of the time overserved and not the fair sentence that should have been originally imposed.

IV.  EXTRAORDINARY AND COMPELLING REASONS RELIEF

24.)  David King received a sentence that was more than triple what the advisory guidelines would have been if sentenced today. The labels placed on his prior charges as violent conduct is not an accurate portrayal of the facts and circumstances.

He was forced to serve the entire sentence before being released and resentenced, which did not aid his re-entry into society or accomplish the goal of rehabilitation. (As the government had claimed justified the long sentenced imposed) This overall, works against the interest of the public or government for the betterment of society or to serve justice for the American people. Such lengthy sentences make it more difficult for prisoner to reintegrate back into society or make better citizens of themselves.

25.) Although David King took many classes , earned his GED, participated in many programs during his period of incarceration the extra 84 months of his life spent in prison is time he will never get back. He can never recover from the medical harms caused by the negligence of the federal authorities that he currently suffers from, To witness, that Butner and other BOP facilities had a cure for his contracted Hepatitis C and simply callously did not provide it at the time, not to mention not even simply receiving credit for the time spent erroneously in prison.

26.) The misapplied mandatory minimum sentence for a career enhancement based on a hypothetical future risk category and an abstract, generic version of the offense in question for simple possession of a firearm was unreasonable. This penalty was far beyond what congress had in fact enacted and the purpose of the ACCA reasoning. The retroactive effect of Welch and Johnson gave the court reasoning to resentence. Recent amendment under 821 also allows for resentencing under 18 U.S.C.S. (c)(1)(2) and U.S.S.G. 1B1.10 policy statements, which eliminates criminal history status points as defined in 4A1.1. This retroactive effect combined with compassionate release creates a different result that was not present or dictated by precedent existing at the time the previous conviction became final. These changes would lower the guideline prescribed if sentenced today, which fundamentally has a substantial effect of his current sentencing guideline range. The violation calls for a remedy by way of a sanction and a possible vacation of the entire sentence. Although such a result may seem as a drastic remedy, the violation is extreme and the Restatement of Torts 2d section 549 allows for a recovery of the difference of the misrepresentation and harm done to be calculated into the equation, which therefore would make a complete vacation of the sentence reasonable, if not a mandatory form of relief. If the 96 month sentence was reasonable, then the remedy would require a recovery to substract the excessive 84 months from the 96 months served. this would be a proper remedy in and of itself without any factors considered, such as good time credits and injuries or recent findings and amendments by the courts and congress.

27.) There are procedural effects that alter the range of permissible methods for determining whether his conduct was punishable with regards to David's culpability at the time of the offense in question. These issues were not explored or considered at any time. The penalty David King received was beyond what congress in fact has enacted and as such, collateral review by way of the writ presented here before the Court is the only way to receive relief.

28.) The writ of audita querela then allows us to consider any changes in the law since the original sentence was imposed.

Booker would not be applicable through section 2255(h) and a Rule 60 Motion would not allow such considerations to be applied. One such consideration is the First Step Act (FSA), which was amended directly after sentencing was applied and again in   2023, making a disparity in sentencing. This qualifies as an extraordinary and compelling reason under U.S. v. Chen, 48 F. 4th 10920 (9th Cir. 2022). The FSA's bar on a second resentencing is not jurisdictional because the 2255 motion provided a remedy that was not based on the retroactive amendments since then. See U.S. v. Hart, 2020 U.S. App. LEXIS 40168, 983 F.3d 638 (U.S. App. 3d Cir. 2020). This created a new minimum sentence guideline as well, Pub.L.No. 115-391 Section 404, 132 Stat, 5194,5222 allows for an eligible prisoner to ask for a lower sentence. Congress did not state jurisdictional requirements and therefore, the court has jurisdiction to resentence a second time. Art.III Section 2CI.1.

29.)  The Court and the government may waive section 404(c) in the interest of justice, as David King is eligible to receive credit from his previous sentence that he did not receive under the FSA and Fair Sentencing Act amendments. Section 3582 (c)(1) exhaustion is not jurisdictional. The residual clause for section 3559 applies to (c)(1)(A)(i), allowing exceptions to modify sentences under 3582. A reduction can be found as if Mr. King was sentenced today. This then can be credited to his presently serving sentence, lowering the exposure and guidelines pursuant to the sentencing commission 28 U.S.C.S. 994(o)

The 2020 Due Process Protections Act and progeny of Brady v. Maryland combined with Fed.R.Crim.P. 5 support a finding of prejudice that warrant an entire reversal of the sentence. All of these factors support a finding of extraordinary and compelling reasons that support the writ of audita querela.

VI. LEGAL ARGUMENTS AND CLAIMS

30.)  A motion under Amendment 821, 18 U.S.C. 3582(c)(2) for resentencing allows for U.S.S.G. 1B1.10 Policy to take into effect for the elimination of criminal history status points under U.S.S.G. 4A1.A See U.S. v. Fichera 2024 U.S. D.N.M. (10 Cir.2024) LEXIS 215480. Retroactive Amendments such as 821 allows for the defendant to seek relief through collateral review. The Defendant is seeking relief from the 924(a)(1) and 922(g)(1) charge, whereas the previous petition sought relief from the 924(e) enhancement. This is important because the petition at hand is not a successive 2255(h) nor a Rule 60(b)(6) motion, nor a new 2255 motion. the writ of audita querela applies in this instant case, regardless of the retroactivity of the amendments and the remedies sought, which also [now] allows for Booker claims to be raised.

31.)  A sentence can be modified under 3582(c) and 404 under the FSA, and determined by 1B1.10(a)(2)(B) regarding eligibility for a sentence reduction. As section 3582(c)(2) "Authorizes a district court to reduce an otherwise final sentence pursuant to a guidelines amendment if a reduction is consistent with the U.S. Sentencing Commissions Policy statements." Dillon v. U.S. 560 U.S. 817, 818 130 S.Ct. 2683, 177 L.Ed. 2D 271 (2020). (FSA resentencing is similar to a 18 U.S.C. 3582 (c) proceeding for the miscalculation of prison time). The FSA allows district courts to consider intervening changes of law

or fact in exercising their discretion to reduce a sentence pursuant to the First Step Act." See: Conception v. U.S. 597 U.S. 481, 498 n.6 567 U.S.142 S. Ct. 2389, 213 L.Ed. 2D 731 (2022). Section 3742 also applies as the review may be sought of the sentence when the sentence was 1.) in violation of the law, 2.)an incorrect application of the sentencing guidelines, or 3.) greater than the sentence specified. This case can be remanded for further sentencing under the guideline that were in effect on the date the previous sentencing prior to appeal with any recent amendments, such as the Fair Sentencing Act or First Step Act, as existed at or prior to sentencing. See U.S. v. Montgomery 582 F. Supp. 3d. 485 2021 U.S. (Dist. 6th Cir. )Lexis 194615.

B. CLAIM TWO: FAILURE TO JUSTIFY SENTENCE IMPOSED

32.)  The court erred in the resentencing by not considering factors which would have allowed the entire sentence to be vacated. David King was denied the opportunity to present the factors of his previous conviction. This amounted to an adjustment of a final sentence and not a plenary resentencing proceeding, as the ACCA provided a completely different guideline range and mandatory minimum that he was originally not subjected to. Corrected sentences are subject to a reasonableness review, and the grouping of the priors gave Mr. King a much higher guideline range than what the current amendments allow. This amounts to an abuse of discretion and a violation of the law giving rise to review under section 3742(a)(1). See U.S. v. Ramos 2024 U.S. App. 2nd Cir.) (Court did not make adequate finding to support a sentence above the guidelines regarding unproven claims of continuing criminal conduct).

33.)  A sentence is procedurally unreasonable if, among other reasons, the district court "fails to explain the chosen sentence". Although "a district court must sufficiently explain its reasoning so that the parties, the public, and reviewing court can understand the justification of the sentence... The court must state the specific reason for the sentence imposed.[and] a major departure should be supported by a more significant justification that a minor one." U.S. v. Alden, 792 F.3d 247 251-52 (2nd Cir. 2015) Therefore, Mr. King is in partial challenging the reasonableness of the sentence imposed without considering  the factors of the prior charges as well as not providing credit for the overserved time to balance the factors out of serving an extra 84 months. The court showed adequate reasoning for the necessity of a resentencing procedure and release, yet failed to explain why a sentence of 96  months was appropriate. The court did not state any reason as to why the entire sentence should not be overturned and vacated and why the defendant did not deserve a complete reversal.

34.) As stated prior, the restatement of torts specifies that such relief is possible on the basis of a fraudulent mis-

representation, in subtracting the damage from the actual value. Under the new classification as a non-ACCA offender,

justification for the sentence imposed must be shown. Without such, it is unreasonable to sentence David King to 96

months without considering his good conduct after 13 years in prison, or credit him for good time credits. The reasoning

cannot be that 96 months was reasonable in light of the 13 years that he served, it must accurately reflect the conduct

and priors. Because "guidelines are in a real sense the basis for a sentence" See U.S. v. Harris, 2016 U.S. Dist. WL 6109758

at 5 (W.D. Okla. Oct. 1st 2016) LEXIS 1447056 (Explaining that the career offender enhancement had a substantive effect

on the defendant 's sentence because he received a sentence nearly triple what the advisory guideline range would have

been absent the enhancement, thereby making the "true role" of sentencing guidelines apparent). The Due Process
   protections Act requires a reversal or vacation of the sentence under these circumstances.

C. CLAIM 3: GOOD TIME CREDITS:

35.) David King earned 13 years of good time credits, under the recent amendments this amounts to 54 days per year.

This should be credited into resentencing as well, or the honorable thing to apply these credits to his new presently serving

sentence. This must be applied, just like a bank account is credited or debited. In total, David King served 4,727

days in prison. At a rate of 54 days without any form of interest applied, as it is overdue, David earned 704 days of good

time credits, He was resentenced to 2,920 days, which did not calculate the good time credits or the time he overserved.

His sentence must be adjusted to apply the good time credits, which adjusts the sentence to 2,206 days, or 72 months. If

we then subtract the year for release to a halfway house and then apply the adjustment for the 84 months credit as well as

the 2 years Mr. King spent on post release supervision, the sentence should still be adjusted to reflect these applicable

credits, totaling 52 months extra. In other words given all the credits applicable, David King should have received credits,

for a total of 52 months, plus 96 months to a total of 148 months, as this is essentially the amount of time he served given

these credits. Even if the 96 months sentence is reasonable and even if the Restatement of Torts 2d does not apply, then

 the sentence must be adjusted to include Good Time Credits (GTC) and Halfway house as well as post release supervision

to 2 4 months or less. This still does not consider the applicable amendments that have been made since then, or disparity

options, If everything stated up to this point can be applied, then Mr. King is owed 52 months. This is substantial given the

current sentence he is serving, because this is of the utmost importance to acknowledge, that Mr. King should not be con-

sidered a category 2 criminal offender in light of this situation and circumstances. Since the sentence he is presently

serving today relied on all the amendments and Supreme Court findings. This finding is substantial, as it has an effect on

the sentence he is presently serving. If the sentence is vacated in full, he has 6,536 days of credit.

"Federal Prisoners have a statutory right to credits toward service of their sentence for good time conduct" <u>U.S.</u> <u>Hammond</u>, 2020 U.S. Dist. at 26 (W.D. Pennsylvania 2020) LEXIS 78646: See also <u>Jackson v. Doerer</u> 2024 U.S. Dist. (Central Dist. of Cali) LEXIS 203459 (BOP cannot through administrative rule, deny petitioner earned time credits based solely on status category. BOP applied regulations in a manner that conflicts with FSA statutory eligibility provisions.) See paragraph 102(b)(1) in the First Step Act of 2018, Pub.L.No. 115-391, 132 stat. 5194, amend. 18 U.S.C. 3624(b) and the Sentencing Reform Act of 1984. (With regards to halfway house time and Second Chance Act 3624(c). David King was released to halfway house after completing his sentence, however under the new amendments, an inmate becomes eligible 12 months before his release date. Section 3621(b) directs the "BOP to consider placing an eligible individual in an RRC for up to the final 12 months of his or her sentence." <u>Dennis v. Sniekek</u>, 558 F.3d 508, 514 (6th Cir.2009). See also <u>Bun v. Wiley</u> 351 F. Appx. 267, 268 (10th Cir. 2009) The defendant 's resentencing should include this time into calculation as an applied credit. This in turn allows for Mr. King to apply these credits to his presently serving sentence pursuant to 18 U.S.C. 3585(b) since they have not been credited to any other sentence.

D. <u>CLAIM 4: APPLICATION OF RETROACTIVE AMENDMENTS</u>:

36.) 3582(c)(2) is retroactive under amendment 821 by the sentencing commission. Under part A of the act, one point may be removed if there are over 7 criminal history points or eliminate all 6 points under U.S.S.C. 4A1.1(e) was made ret-retroactive in November of 2023 and applies to closed cases under amendment 403(b), the court has discretion to vary from the guidelines and to consider 3553(a) factors. See <u>Dorsey v. U.S.</u> 132 S.Ct. 2321, 183 L.Ed. (First Step Act new lower mandatory minimums apply to post FSA sentencing of pre FSA offenders) Under this procedure, the court must consider whether all counts were grouped under the sentencing guidelines or unbundled and repackaged, whether vacated counts effected the total offense level, and whether the previous sentences were set to run concurrently or consecutively. "The amendment guideline that could have been applicable to the defense if the [retroactive] amendments to the guidelines... had been in effect at the time the defendant was sentenced". <u>U.S. v. Boyd</u> 721 F.3d 1259 2013 U.S. (App.10th Cir.) LEXIS 14202. "it must be because the amendment effectively inflicts a greater punishment for the crime that was in place at the time the crime was committed." <u>U.S. v. Vernon</u>, 814 F.3d 1091, 2016 at 28 (10th Cir.2016). The 2018 FSA gives federal courts discretion to reduce sentences resulting from pre-fair sentencing act of 2010 as if the FSA modifications with the guidelines as they existed at resentencing to retroactively apply Amendment 742. See <u>Dillon v. U.S.</u> 560 U.S. 817 130 S.Ct. 2683, 2693 177 L. Ed. 2D 271 (2010).

37.) Amendment 782 opened the door for the 742 non-retroactive amendment, which struck 4A1.1(e) and would significantly

lower the sentence David King  was exposed to at resentencing. This would effectively lower his criminal category and guide

line range. See U.S. v. Urena, 659 F.3d 903, 909 (9th Cir. 2011). If resentenced today, David king would be sentenced to a

significantly much lower sentence. Under 403(b) "district courts may consider non-retroactive changes in the sentencing law

in combination with other factors particular to the individual defendant, when analyzing extraordinary and compelling rea-

sons for the purpose of 3585(c)(1)(A)." U.S. v. Chen 48 F.4th 1092, 1098 (9th Cir. 2022). Such a reduction is consistent

within the U.S.S.G. 1B1.10 and this courts discretion under Booker and Apprendi, as a gross disparity was caused by

changes in the law, resulting in an unusually long sentence. See 1B1.13(b) The FSA was amended , therefore  causing this

disparity at sentencing, which was based on the originally unlawful sentence.

38.)  Amendment 821 limits the impact of status points. When linked together, the sentence imposed at sentencing was

excessive in light of the congressional findings to date. The loss of liberty based on an error of the government is sub-

stancial. Mr. King was originally given a plea of 3 years before the government elected and argued wrongfully that his sen-

tence must be increased to 15 years by law. The result was a difference of 10 years in prison, 3,650 days of unlawful

confinement. A proper redress would be to vacate the entire sentence, or credit David King with the proper amount of time

as though he was sentenced today. Also as proposed earlier in this Motion, David King deserves at the bare minimum, a

credit of the difference between time earned and time sentenced by an application of the credits he should have received

to adjust the difference, which can be paid forward to his [presently serving sentence]. David King's entire life has been

damaged permanently.

E.CLAIM 5 AMENDMENT TO 924(a)(2) BLAKELY, APPRENDI, BOOKER

39.)  In 2005, King's attorney argued correctly that Blakely applied to the case. Substantial changes in the law have been

applied since 2005 and 2017. King's entire criminal history has relied upon pleas and facts alleged by the government that

were accepted at face value by the courts as per plea agreements. No Jury has ever ruled upon the conduct alleged. This

compound effect has incurred a liability to the government and incurred the equivalency of essentially a life sentencing

scheme. It is difficult to assume that the legislative intent by congress and the constitution written by framers would imply

such result. Their intent was obvious not to take away the right to a jury trial to encourage a judicial economy in saving

time and money for the government in affording and appointing a jury to decide facts and establish criminal culpability of

a defendant. This places a limit on allowing a defendant of having any chance to defend himself to define the truth and

facts of the matters as alleged or asserted by the government. In the long term a defendant is exposed to greater pun-

ishment by assisting the government actors, when many times they are reliant on hearsay or factual misrepresentations.

The government then gains a cheaper conviction, without a jury deliberation of the evidence and facts. Without such

safeguards and protections, there is no equity or fairness in the justice system.

40.) Many of the prior convictions have been mistaken due to the miscarriage of justice by the government consistently obtaining convictions through targeting defendants they know are likely to plea out if threatened with outrageous long sentences that would not apply by the guidelines and procedures at trial. By threats of increased punishments as retaliation for going to trial, the government obtains a conviction by stipulation and not by a preponderance of the evidence, let alone clear and convincing standards. This is exemplified in this case, as Mr. King was convicted if priors by stipulated facts, many of which he was innocent of, yet given extreme punishments for pleaing instead of going to trial, where he more than likely would have won, no jury would have found found David King guilty of a violent crime for robbery of a storage shed, one that he did not knowingly "illegally" break into. Yet, he was forced to plea and serve a 15 year sentence based on being mislead by the prosecution, being naive to these tactics the government took advantage of Mr. King as well as other defendants accused of criminal conduct. See U.S. v. King 422 F.3d 10554 422 F.3d 1055 2005 U.S. ( App. 10th Cir. ) LEXIS 18851. The argument raised prior to the ACCA enhancement and at appeal was correct, although not found as such until 13 years later.

41.) This error is clearly not harmless. David King never once was given the opportunity to present the factors involved in each of the convictions or have a jury deliberate as required under Booker. See. U.S.v. Booker, 543 U.S. 220, 125 S.Ct. 738 160 L. Ed. 2D 621 (2005). These factors regarding the case, considerably increased the sentence imposed and the resentencing procedures for the guidelines, which are advisory and not mandatory. Factors with respect to what truly happened in each of the prior cases, regarding King's culpability and liability. Without a single chance to raise issues at trial, a jury was deprived of the ability to take into consideration whether he was truly guilty or not. This compounds to the point where a defendant can spend an entire lifetime in prison for conduct that was merely stipulated and plead to without a factual basis for such pleas. The impression this leaves is substantially harmful and taints further sentencing proceedings. The jury should have determined whether a burglary was in fact a violent offense or a petty misdemeanor offense, or whether a storage shed burglary counted as a violent criminal offense. Such as in this instant case, where David King was convicted for taking a bicycle from a garage, which was claimed as a felony residential burglary.

Another conviction was for breaking a lock on a storage shed for someone else, of whom he thought had a legal right to entry. Under the threat of an enhanced penalty, he signed a plea and later was given a 15 year sentence , as both of cases were used to enhance him to an ACCA offender for mere possession of a firearm, a right secured by the Second Amendment and recently upheld by the Supreme Court. Mr. King's entire life has been stolen for a petty theft and misdemeanor offenses that he was misled into pleading guilty to. On this one enhancement the government is looking to take over 17 years from David King overall, in consideration of the current conviction.

42.) Yet, this history has been used again and again by the government. This foundation has been built on a faulty premise, as the record here shows. Pleas are often increasingly difficult to challenge and most defendants do not see the PSR or stip-ulated facts until after the pleas has been entered. This offers little opportunity to challenge certain factors under a promise of a lowered sentence, often when no sentence should have been imposed. Experience prosecutors are well aware of these facts and often exploit the less educated or less informed and even the naive to their advantage, as they did to Mr. King in the case at hand.

43.) One such example of how programming and a community support system can advance the true purpose of federal sen-tencing policy and rehabilitation is U.S. Walker 252 F. Supp 3d 1269 2017 (10th Cir. 2017) LEXIS 76358, Where Walker at age 57 was given a chance to program through a 13 month deferred sentence and ultimately was sentenced to 10 years of probation instead of the 155-188 months he was facing as a category VI offender for 2 counts of robbery. It was shown that Walker suffered from an illness as well as a life time of drug addiction. He showed significant recovery and the judge determined that imprisonment would not serve the interest of society. Walker was provided a counselor and was able to go 3 years without relapse. As "addiction biologically robs drug users of their action." U.S. v, Hendrickson, 25 F. Supp. 3d 1166, 1172-73 (N.D. Iowa 2014)(Addiction will often mitigate a defendant's culpability, which can weigh in favor of a downward variance) The district court failed to state reasons for the sentencing of 96 months, instead of a downward departure or variance.

44.) If a district court fails to provide "an adequate explanation for the particular sentence imposed," a remand is oblig-ated. See U.S. v. Flinn, 987 F.3d 986 2008 U.S. App. LEXIS 25747.  At sentencing, it was obvious that David King was not qualified as an ACCA offender, yet the sentenced imposed at remand of 96 months was excessive in combination of all the factors combined. The outcome is now the difference between life and death in prison or not. If resentenced, Mr. King could then be placed in a category I, and even potentially receive time credits for his previously unlawfully imposed sentence. The

court at resentencing failed to articulate the reasons for the particular degree of departure, and Mr. King was willing to accept any form of relief after 13 years in prison. " An upward departure must also be reasonable in degree. Therefore, in departing from the applicable guidelines range, a sentencing court must specifically articulate reasons for the degree of departure," using " any reasonable methodology hitched to the sentencing guidelines." U.S. v. Collins, 122 F. 3d. 1297, 1309 (10th Cir. 1997).

45.) Under Booker, David King is entitled to remand if the judge finds facts to enhance a sentence, 96 months is an unwarranted sentence under current laws and amendments. The error is plain because it is clear or obvious under new well established precedence of the Supreme Court. See. Erlinger v. U.S. 602 U.S. 821, 144 S. Ct. 1840, 1851, 219 L.Ed. 2D 451 (2024). (The court improperly invaded the jury's providence because "a fact that increases" A defendant's exposure to punishment, whether by triggering a minimum or maximum sentence, must "be submitted to a jury"and found unanimously and beyond a reasonable doubt)The sentence at remand seriously effected the fairness, integrity, of the public reputation of judicial proceedings, is plainly erroneous and must be vacated in full. The writ is timely, as Mr. King has been preempted from filing due to factors beyond his control, such as illness and imprisonment. In sum, if the district court had considered the guidelines as advisory and not mandatory, under Booker precedence and the 6th Amendment, it failed to show a lesser sentence at remand would have ben sufficient. See. U.S. v. Burns 175 Fed. Appx. 204 2006 (U.S. App. 10th Cir.) LEXIS 8428 924(a)(2) 922(g) 54 month sentence remanded under Booker). Booker is not retroactive to habeas corpus cases on collateral review as set forth in Teague and Cruz, but applies with a writ of querela. Booker announced a new rule of constitutional law and the ban on habeas motion does not apply. The error of the sentence has led to truly extraordinary circumstances unique to David King and resentencing under the now advisory federal sentencing guidelines is necessary to achieve justice. See Kessack v. U.S. 2008 Dist. Lexis 7793 (W.D. Wash. Jan. 2008)( Defendant was "uniquely impacted by the guidelines calculations" warranting audita querela relief.

VII. AUDITA QUERELA RELIEF IS WARRANTED:

46.) Audita querela was found appropriate when "relief against a judgment or execution because of some defense or discharge arising subsequent to the rendition of judgment" U.S v. Guerro, 415 F. Appx. 858, 859 (10th Cir. 2011). "because of the rules of retroactivity and limitations on successive habeas challenges, the defendant's only avenue to request consideration of his sentence was through the writ of audita querela." U.S. Kenney, 2017 U.S.Dist. LEXIS 21453 2017 WL 621238 at 2 (D. Utah 2006) "it may also lie for matters arising before judgement where a defendant had no opportunity to raise such matters in defense... 1.) Valid objections 2.) To a judgement that arises after rendered 3.) Not redressable by any other means." Kenny 2017 U.S. Dist. LEXIS 21453 at 4. Therefore, the requirements in Kenny are met for this writ at hand.

14

47.) In the pending case and sentenced remanded, the defendant was denied an opportunity to challenge the validity of his prior convictions required by 21 U.S.C. 841(a)(1), which allows a hearing to deny allegations by information or prior convictions, or any claims that      conviction is invalid, as many of these priors are. The burden required for such conviction is beyond a reasonable doubt and the convictions relied upon are in fact invalid. The U.S. failed to file sentence enhancement information pursuant to 851(a)(1) at the time of conviction and resentencing. This call for the use of 28 U.S.C. 1651.

48.) The sentencing judge has access to and greater familiarity with, the individual case and individual defendant. See Gall v. U.S. 128 S. Ct. 586, 597-598, 169 L.Ed. 2D 445 (2007)(Judge must adequately explain the chosen sentence to allow for meaningful appellate review and consider 3553 factors as well as allow parties to argue for certain sentences in court) The judge in this case was the Honorable Martha Vasquez. "Congressional and jurisdictional actions have rendered the federal post-conviction relief system inaccessible to most prisoners, many of whom have languished under unfair, and at time wrongful convictions, a conviction that has been rendered invalid by an intervening change in the law for which there is no other redress and where the circumstances are compelling enough to warrant relief." See U.S. v. Garcia 2024 U.S. Dist. LEXIS 124392 F. Supp. 3d (D.N.M. July 1, 2024) ( Internal quotes of Marth Vasquez omitted) (audita querela appropriate in resentencing of 924 to apply to Booker and new amendments). Based on this analysis, Judge Martha Vasquez had sentenced David King and resentenced him. Amendment 742, 821, and others may now be considered by way of audita querela. The Fair Sentencing Act of 2010 logic applies regarding crack cocaine disparity options under section 3553(a)(6) and similarly situated defendants. Also see 3553(a)(4)(The need for rehabilitative services). Consider Begay v. U.S. 128 S. Ct. 1581, 170 L.Ed. 2D 490 (208)(DUI no longer considered a violent felony under ACCA) David Kings' criminal record began with a DUI.

49.) In 2022, 924(a)(2) was amended and no longer provides the penalty for 922(e) convictions. The amendments implimented 932 and 933 to punish trackifing of firearms and not simple possession of a firearm. The White House has recently considered allowing prior felons to own firearms after they have completed their sentences and served their debt to society. Congressional intent has shown that they are targeting conduct such as "to sell or dispose of a firearm in furtherance of terrorism or drug trafficking" and not the mere possession of a firearm. See Bipartisan Safer Communities Act Pub. No. 117-159 Section 12004(c), 136 stat, 1313, 1329 (2022). This amendment applies to a narrow range of conduct, showing congressional intent to not target possession but to target trafficking and drug cartel operations.

50.) It is not enough that an item previously traveled through interstate commerce to grant federal jurisdiction by taxation and levies to side step the constitution. States have police authority to regulate criminal conduct. The federal government has used and abused the commerce clause and stretched it so thin, that it barely has meaning anymore and has formed fed-

eral jurisdiction over literally everything. It would make more sense if the government was more transparent and amended

the constitution to state that the commerce clause allows federal jurisdiction over any conduct. The states only have limited

power granted to them by the federal government than it would to interpret the commerce clause to be applied to non-

commercial conduct, however such transparency would obviously be vigorously opposed and denied. Yet, when applying the

commerce clause to non-commercial conduct, the federal government has used it to apply to anything they deem fit in ways

that are imaginary or even downright delusional. Possession of a firearm or any item, has no effect on commerce that would

require federal jurisdiction to be applied to regulate all forms of non-commercial activity. Hence, why the wording of such

statutes and amendments to 922(a)(2) and 924(a)(2) would infer that congress recognized the necessity of changing the

statutes. These changes set new precedence, allowing the court to decide if these changes invalidate 922(g) and 924(g)(1).

The government has shown a clear pattern of abusing its authority and an opportunity to redress such grievances is fun-

damental to a true, fully operational government under American jurisprudence. The system of checks and balances requires

the right for Americans to challenge laws and overreaching governmental body, made for the people by the people. As "even

a dog distinguishes between being stumbled over and being kicked. C.F. Holmes, The Common Law 3 (1881).

51.)  The government cannot establish that David king's actions had the requisite substantial nexus to interstate commerce

as required under 922(g)(1) and 924(a)(2). U.S. Const. Art. 1 Section 8 Cl.3. See. U.S. v. Lopez 514 U.S. 549, 558 115 S.

Ct. 1624, 131 L.Ed. 2D 626 (1995) (Holding that the Gun Free School Zones Act of 1990 exceeded congress' commercial

clause authority because it "neither regulated a commercial activity nor contained a requirement that the possession be

connected in anyway to interstate commerce"). On the same line of thought, 18 U.S.C. 844(i) "Does not cover the arson of

an owner occupied dwelling" Because, by its terms, it "covers only property currently being used in commerce or in an

activity affecting commerce".  Jones v. U.S. 529 U.S. 848, 859 120 S.Ct. 1904, 146 L.Ed. 2D 902 (2000). As a similar

finding was made in U.S. v. Campbell 372 F.3d. 1179 (App. 10th Cir. 2004), where the government failed to prove a rifle

had affected commerce, and the possession was not unlawful.

16

52.) The right to bear arms and the freedom of speech extended from ending and preventing taxation and regulation by the British colonizers, not the intent of illegalizing the possession of a firearm. As has happened to Mr. King in the instant case. Historical contextual factors would never have allowed for the federal government to imprison a citizen for possession of a firearm. The 2nd Amendment on it's face is plain and simple.

53.) Possession of a firearm is not always a commercial transaction, as they can be gifted or possessed with little to no effect on interstate commerce. This essentially means that only the government can legally possess and sell firearms, which is an abolition of the constitution. The Constitution was meant to uphold the rights of American citizens and place limitations on government officials.

Consider U.S. v. Forbis F. Supp.3D 2023 WL 5971142 (N.D. Okla 2023), which held that the 2nd Amendment to the U.S. Constitution protected the possession of firearms. The statue prohibiting possession of firearms by felons was unconstitutional, as felons are still part of the people. As applied to Forbis, his priors were non-violent in light of historical precedence of the 2nd Amendment. 922(g)(1) was not consistent with historical precedence and regulations, preventing drunk drivers and drug users from possessing a firearm. Let alone, subjecting them to lifelong imprisonment. Such regulations are invalid under the constitution and commerce clause as a whole. Thus, the wording in the Bipartisan Safer Communities Act.

FINALLY,

"[I]t is a fundamental principle of statutory constructions [and indeed of the language itself] that the meaning of the a word cannot be determined in isolation, but must be drawn from the context in which it was used." See Deal v. U.S. 508 U.S. 129, 132, 124 L. Ed. 2244, 113 S. Ct. (1993). As such, David king in entitled to be credited the time served that was not applied to a previous sentence. See Crooker v. U.S. 828 F.3d 1357 LEXIS 12762 (2016 U.S.App. Fed.Cir.)(Los of liberty on error of the government is credible through 3585(b)). In Crooker, as part of a plea agreement, he was credited 2,553 days towards a sentence for a prior term of imprisonment on a separate offense. The court found that he was entitled to relief under the unjust conviction and imprisonment not for monetary relief, but was entitled to credit for his unlawful term of imprisonment. See U.S. Dorsey, 166 F.3d 558, 1999 U.S. App. LEXIS 1174 (3rd Cir. App.) and section 561.3(b) "if the undischarged term of imprisonment resulted from offenses that have been fully taken into account in the determination of the offense level for the instant offense, the sentence for the instant offense shall be imposed to run concurrently, to the undischarged term on imprisonment". This is considered as "relevant conduct" used to enhance a sentence or assign criminal

status points. See BOP Policy 5880.22 & EMS DM 154-49 (computation of jail credits). Therefore, there is no dispute that David king has the right to credits for time previously served that has not been applied toward another sentence. 18 U.S.C. 3585(b), which was straightforward, in that it provided a prisoner "shall be given credit for time that has not been credited against another sentence." See Hughes v. Slade 347 F.Supp 2D 821 (C.D. Cal. 204).

In Hughes, for example, The BOP's use of "should receive" clearly implied that an inmate had not yet received the credit. Despite being given substantial amount of time to marshal facts in support of his claim, BOP in Hughes had not demonstrated, through reference to Mexican statutes or declarations from Mexican officials, that Hughes had been awarded credit or would be awarded credit against his Mexican prison sentence once he was returned to serve that sentence.

Accordingly, the inmate was entitled to habeas relief under 28 USC 2241 since he rebutted the presumption created by BOP's program statement. Hughes had successfully demonstrated that he has not received credit toward any other sentence for time he spent in Mexico, as under 18 U.S.C. 3585(b), he was entitled for the entire term of imprisonment served in Mexico. This shows that relief may be granted in this situation. 18 USC 3585 applies to exceptional cases, even when served in another country's jurisdictions. Mr King has clearly demonstrated that he has not received the credits towards any other sentence. Therefore, David King is entitled to those credits  and consideration of whether the full sentence must be vacated in full and applied as well as the alternative, a Compassionate Release.

VII. CONCLUSION

WHEREFORE, premises considered, The Petitioner requests that his previous sentence be VACATED in full or in the alternative that this Honorable Court order all credits the court sees applicable to be applied to correct the calculation for the time credits earned and the injustice that has been orchestrated against Mr. King. These credits then can be applied to his presently serving sentence. Or the alternative as the Court deems worthy.  David king prays the Court GRANT the relief requested in this petition.

Respectfully submitted this ___8th___ day of December 2025

David L. King #2164-051
FCI Big Spring Camp
1900 Semler Ave.
Big Spring, Texas 79720

## Disparity Options (cases)

If we consider disparity options, the following list of cases applies:

- U.S. v. Martinez, 2024 U.S. Dist. Lexis 190216 (DNM) (1B1.10(a)(1), (d) and 4A1.1(e) status points lowered at resetnencing under 821 from 96-121 months to 87-108 months)

- U.S. v. Phillips, 133 Fed. Appx. 481 2005 U.S. App. 10th cir. Lexis 9734 (65 month sentence for 922 (g)(1) & 924(a)(2))

- U.S. v. McGuffin, 149 F. Appx. 481 2005 U.S. App. 10th cir. Lexis 13081 (44 months for 922(g) (1) & 924(a)(2))

- U.S. v. Connelley, 1994 U.S. App. 10th cir. Lexis 7770 (27 months 922(a)(2))

- U.S. v. Vigil, 301 Fed. Appx. 788 2008 U.S. 10th cir. Lexis 24765 (48 months 922 & 924)

- U.S. v. Najar, 451 F. 3d 710 10th App. 2006 Lexis 15171 (30 months 942 (a)(2) & 922 (g)(1))

- U.S. v. Bennett, 141 Fed. Appx. 759 2005 U.S. App. 10th Lexis 15658 (vacated under Booker, original 30 month sentence for 924 (a)(2) & 922 (g)(1))

- U.S. v. Maese- Solana, 2021 U.S. Dist 10th cir. Lexis 53112 (27 month sentence 922/924)

- U.S. v. Garcia, 2024 U.s. Dist. Lexis 124392 (10th cir.)(37 month sentence vacated 922/924)

- U.S. v. Hurlich, 293 F. 3d 1223 (10th cir. App. 2022) Lexis 12305 (922/924 category VI 41-51 month sentence)

- U.S. v. Dennis, 551 F. 3d 986 2008 U.S. App. Lexis 25747(922/924 46 month remanded)

- U.S. v. Gambino-Zavala, 539 f.3d 1221 (10th cir. App. 2008) Lexis 18152 (922/924 57 month)

- U.S. v. Phillips, 133 F. Appx. 481 (10th App. 2005) (65 months 922/924 category VI)

- U.S. v. Crawford, 254 Fed. Appx. 481 (10the App. 2008) (65 months 922(g)(1))

- U.S. v. Aguirre, 356 Fed. Appx. 138, 2009 Lexis 27015(10th cir. App.) (92 months remanded)

- U.S. v. Griffith, 2004 2nd App. 102 fed. Appx. 203 (32 months 922/924)

- U.S. v. Kelbch, 2023 U.S. App. Lexis 21999 (63 months 922/924)

- U.S. v. Chavez, 2023 10th cir. App. Lexis 155113 (84 months 924/922)

- U.S. v. Hooks, 33 Fed. Appx. 371 10th App. 2002 Lexis 1632 (55 months 922(g)(1))

- U.S. v. Seals, 2017 U.S. Dist. Lexis 158684 (N.D. Okla.) (77 months 922 (g)(1) 924(a)(2))

- U.S. v. Pennington 2024 U.S. Dist. Lexis 193184 (10th Cir.) (157 years 924(c) resetneced 84 months.

    The following cases were granted compassionate release:

- U.S. v. Curtis 2020 U.S. Dist. Lexis 206113 (10th cir.) (sentenced to 2,271 months 8 counts of Hobbs Act and 8 counts of 924(c) granted compassionate release to 20 years time served)

- U.S. v. Walker, 252 f. supp, 3d 1269 2017 U.S. Dist. Lexis 76358 (Sentenced to 10 years of probation due to his age (57 years old), rehabilitation, lower recidivism, participation in programming, and was originally facing 155-188 months as a category VI offender. He was able to help his wife through medical issues and work as a painter. Drug addiction was the main cause of him robbing 2 banks. This is a prime example of what could have happened had King been given the same opportunity.)

- U.S. v. Pullen 2020 U.S. Dist. 10th Cir. 2020 Lexios 127051(Due to cronic medical reasons and Section 3582(c), mandatory sentening no longer applied. Charged with 841(a)(1)/(b)(1)(B) & 924(c)(1)(A)(i), had hypertension and liver damage from untreated Hepitis C. This was enough to

satisfy a heightened risk of serious illness due to potential exposure to covid-19.)

U.S. v. Washborn U.S. Dist. LEXIS 98732 (2023 10thCir.)(compassionate release granted)

U.S. v. Foster 2023 U.S. Dist. Lexis 117263 (D. of Maryland 4th Cir.) (Life sentence to 32 years)

